IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HILLARY SCOTT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 3:20-cv-00585 |
| ) | |
| ANITA WHITE, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE HOLMES |
| Defendant. ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Defendant's Motion to Dismiss or Transfer Complaint (Doc. No. 14), Plaintiff's Response (Doc. No. 48), Defendant's Reply (Doc. No. 50), and the parties' supplemental briefs (Doc. Nos. 60, 61). For the reasons set forth herein, the Motion is **DENIED.**

### II. Factual and Procedural Background

Plaintiffs Hillary Scott, Charles Kelley, David Haywood, and Lady A Entertainment LLC ("LAE") brought this action against Defendant Anita White seeking a declaratory judgment that they are not infringing on Defendant's purported trademark rights. (Doc. No. 1). Plaintiffs Scott, Kelley, and Haywood (the "Musical Group") are all Tennessee residents and LAE is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee. (*Id.* ¶¶ 1-4). Defendant is a resident of Seattle, Washington. (*Id.* ¶ 5).

The Musical Group alleges they are members of a band that, until June 11, 2020, used the federally-registered brand names "Lady Antebellum" and "Lady A" to promote their goods and services. (*Id.* ¶ 10). In recognition "of the hurtful connotations of the word 'antebellum,'" however, "the Musical Group announced on June 11, 2020 that they would discontinue using their

'Lady Antebellum' brand and use only the federal registered 'Lady A' brand moving forward." (*Id.*)

Plaintiffs allege one of their legal entities applied to register "Lady A" for entertainment services and musical recordings with the United States Patent and Trademark Office ("USPTO") on May 18, 2010, and after no opposition was filed, the USPTO issued registration for entertainment services on July 26, 2011, and for musical recordings on February 19, 2013. (*Id.* ¶¶ 14, 15). The USPTO issued a Notice of Acceptance/Notice of Acknowledgement for the registrations on June 28, 2017 and September 5, 2019, respectively. (*Id.*) On July 21, 2010, the entity applied to register "Lady A" for clothing, and after no opposition was filed, the USPTO issued registration on September 27, 2011. (*Id.* ¶ 16). The USPTO issued a Notice of Acceptance/Notice of Acknowledgement for the registration on December 4, 2017. (*Id.*)

The Complaint alleges that, prior to 2020, Defendant did not challenge Plaintiff's "open, obvious, and widespread nationwide and international use of the LADY A[1] mark as a source indicator for Plaintiffs' recorded, downloadable, and streaming music and videos, Plaintiffs' live musical performances, or Plaintiffs' sale of souvenir merchandise." (*Id.* ¶¶ 17-19). Plaintiffs also allege that Defendant never used "Lady 'A'" as a trademark or service mark before Plaintiffs' registration of the mark, and never applied to register "Lady 'A'" as a trademark or service mark. (*Id.* ¶¶ 23-24).

Plaintiffs allege they recently learned that Defendant, a blues, soul, and funk artist, performs under the stage name "Lady 'A'" in the Pacific Northwest, Louisiana, Mississippi, and Tennessee. (*Id.* ¶ 22). Defendant used "Lady 'A'" to identify herself as the performer on recorded music originally released in 2010, 2013, 2016, and 2018. (*Id.*) Plaintiffs allege that, although the

---

[1] In discussing their trademark, Plaintiffs use both "Lady A" and "LADY A" in the Complaint.

Musical Group and Defendant both have recorded music that appears on Spotify, their artist pages are immediately distinguishable. (*Id.*) Plaintiffs allege no consumers have been confused about the source of their music and Defendant's music. (*Id.* ¶ 25). Plaintiffs seek a declaration that they are lawfully using the LADY A mark and that their use of the mark does not infringe any rights Defendant may have under state or federal law. (*Id.* ¶ 37).

The parties have submitted the following evidence on the personal jurisdiction issue raised in the pending motion. Defendant has traveled to Memphis, Tennessee for performances and music-related business using the name "LADY A" on at least five or six occasions over the last several years. (Doc. No. 17 ¶ 3; Doc. No. 46-1, at 95-97, 108-112, 114-19, 122). Defendant's music is available for download in Tennessee and elsewhere. (Doc. No. 17 ¶ 4).

After Plaintiffs announced their name change to "LADY A" on June 11, 2020, Defendant engaged an attorney located in Memphis, Tennessee who agreed to represent her *pro bono*. (*Id.* ¶¶ 5-8). Plaintiffs' management team contacted Defendant on June 12, 2020, and the parties participated in discussions over the telephone, through videoconference, and by text over the next couple of weeks. (Doc. No. 17 ¶¶ 9, 14; Doc. No. 46-5). During that time, Plaintiffs' attorneys shared a draft "coexistence" agreement with Defendant's counsel, which did not include a monetary demand, and which Defendant ultimately rejected. (Doc. No. 17 ¶¶ 11-12; Doc. No. 46-1, at 75-76). During these communications, Defendant testified, she was trying to protect her trademark. (Doc. No. 46-1, at 55).

On June 25, 2020, Defendant's current counsel notified Plaintiffs that they were replacing her Memphis attorney. (Doc. No. 17 ¶¶ 13-15; Doc. No. 47-1). Current counsel thereafter sent Plaintiffs a draft agreement, entitled "Confidential Settlement and Coexistence Agreement," which

3

required a payment of five million dollars to Defendant, and another five million dollars to charities identified by her. (Doc. No. 47-2). Plaintiffs apparently did not respond to the proposal.

Defendant testified that she made the decision to sue Plaintiffs as of June 30, 2020, and advised certain journalists that she planned to do so after the July 4 holiday. (*Id.,* at 65-66, 68-70; Doc. Nos. 46-6, 46-7). There is no evidence she conveyed that information to the plaintiffs.

Plaintiffs filed the declaratory judgment action in this case on July 8, 2020. Defendant filed suit in the District Court for the Western District of Washington on September 15, 2020. (Doc. No. 16-1). In that case, Defendant alleges she has used the trademark "LADY A" for nearly 30 years; owns nationwide common law rights in the mark; and seeks damages and other relief for trademark infringement and unfair competition. (*Id.*)

### III. Analysis

#### A. Motion to Dismiss for Lack of Personal Jurisdiction

1. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. In considering such a motion, the district court "'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Malone v. Stanley Black & Decker, Inc.,* 965 F.3d 499 (6th Cir. 2020) (quoting *Serras v. First Tenn. Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). When the district court rules based on written submissions alone, the plaintiff need only make out a *prima facie* showing that personal jurisdiction exists. *Malone,* 965 F.3d at 504. If the court holds an evidentiary hearing, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *Id.,* at 505.

It is unclear whether the preponderance-of-the-evidence standard applies, as in this case, when some discovery has been conducted but an evidentiary hearing has not been held (or requested). In *Schneider v. Hardesty,* 669 F.3d 693, 697-699 (6th Cir. 2012), the court recognized the appropriate standard to apply in this situation is an open question, and ultimately declined to decide the issue because the plaintiff had established personal jurisdiction under the more-onerous standard. *Id.,* at 699. The court suggested, however, that the preponderance-of-the-evidence standard should not apply when the plaintiff obtained less than the full discovery requested, or the facts are in dispute. *Id.,* at 698-99. The court also noted that prior decisions had applied the *prima facie* standard in cases where limited discovery was conducted but no evidentiary hearing was held. *Id.,* at 698 n.6 (citing *Bridgeport Music, Inc. v. Still N the Water Publ'g,* 327 F.3d 472, 476-78 (6th Cir 2003)).

Neither party has addressed the issue left open in *Schneider.* Because the Court concludes that personal jurisdiction exists under the more-demanding preponderance-of-the-evidence standard, however, it is unnecessary to resolve the issue here.

2. <u>Specific Jurisdiction</u>

In responding to the pending motion, Plaintiffs argue the Court has specific jurisdiction over Defendant.[2] The Supreme Court recently described the parameters of specific (sometimes called case-linked) jurisdiction:

> Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant, we have said, must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' *Keeton v.*

---

[2] As Plaintiffs do not contend the Court has general (sometimes called all-purposes) personal jurisdiction over Defendant, it is unnecessary to address the requirements for the exercise of such jurisdiction.

5

> *Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L.Ed.2d 790 (1984). They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014) (internal quotation marks and alterations omitted). Yet even then – because the defendant is not 'at home' – the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum. *Bristol-Myers*, 582 U. S., at ___, 137 S. Ct., 1780 (quoting *Daimler*, 571 U.S., at 127, 134 S. Ct. 746; alterations omitted); *see, e.g., Burger King*, 471 U.S., at 472, 105 S. Ct. 2174; *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984); *International Shoe*, 326 U.S., at 319, 66 S. Ct. 154. Or put just a bit differently, 'there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."' *Bristol-Myers*, 582 U. S., at ___, 137 S. Ct., at 1780 (quoting *Goodyear*, 564 U.S., at 919, 131 S. Ct. 2846).

141 S. Ct. at 1024-25.[3]

In applying these requirements, the Court concluded that Ford's activities in the forum state were sufficiently connected to the plaintiffs' products liability claims to make the exercise of jurisdiction appropriate. Rejecting Ford's argument that the forum contacts must give rise to the plaintiff's claims, the Court emphasized that the defendant's contacts with the forum state need only "relate to" the plaintiff's claims. *Id.,* at 1026.

Defendant argues that, in a declaratory judgment action, the relevant inquiry is different. According to Defendant, to establish specific jurisdiction in a declaratory judgment action, the plaintiff must show the defendant purposefully directed *enforcement activities* at residents of the

---

[3] The Sixth Circuit articulated a similar test some years ago in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

6

forum, and the declaratory judgment claims arose out of those activities. To support her argument, Defendant relies on cases applying a test adopted by the Federal Circuit in *Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324 (Fed. Cir. 2008), a patent case in which the plaintiff sought a declaratory judgment that it was not infringing patent rights claimed by the defendant. In considering the defendant's motion to dismiss for lack of personal jurisdiction, the court in *Avocent* distinguished between forum contacts required in an infringement action and those required in a declaratory judgment action:

> In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. *See* 35 U.S.C. § 271(a). Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. *See Red Wing Shoe,* 148 F.3d at 1360. In such litigation, the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention. But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods. . . [such as] the threat of an infringement suit.' *Id.* Thus, the nature of the claim in a declaratory judgment action is 'to clear the air of infringement charges.' *Id.* Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'

552 F.3d at 1332 (footnote omitted). Under this analysis, Defendant argues, the only activities that are relevant to jurisdiction are enforcement activities that go beyond mere threats of litigation, such as prior litigation in the forum or active efforts to prevent use of the trademark.

Although some federal courts in this circuit have adopted the *Avocent* declaratory judgment contacts analysis, *see J.M. Smucker Co. v. Promotion in Motion, Inc.,* 420 F. Supp. 3d 646 (N.D.

Ohio); and *Power Systems, Inc. v. Hygenic Corp.,* 2014 WL 2865811 (E.D. Tenn. June 24, 2014), Defendant has not cited a case in which the Sixth Circuit or the Supreme Court has done so. Neither has Defendant fully addressed the distinction between the posture of the patent litigation at issue in *Avocent* (where the primary issue was whether infringement occurred) and the trademark law issues involved here (where the primary issue is which side has enforceable rights to the trademark at issue). Furthermore, the Court notes that, in more recent cases, the Federal Circuit appears to have limited application of the holding in *Avocent. See Genetic Veterinary Sciences, Inc. v. LABOKLIN GmbH & Co.,* 933 F.3d 1302, 1312 (Fed. Cir. 2019) (concluding that defendant's sublicensing activities in the forum and a cease-and-desist letter sent to the forum were sufficient for the exercise of personal jurisdiction); *Jack Henry & Assoc. v. Plano Encryption Tech.,* 910 F.3d 1199, 1206 (Fed. Cir. 2018) ("*Red Wing Shoe* and *Avocent* did not create such a rule [that patent enforcement letters can never provide the basis for declaratory judgment jurisdiction], and doing so would contradict the [Supreme] Court's directive to 'consider a variety of interests' in assessing whether jurisdiction would be fair. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, ___ U.S. ___, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017)."); *Xerox Corp. v. Monument Peak Ventures, LLC,* 2020 WL 4805736, at *4 (W.D.N.Y. Aug. 18, 2020) (construing the *Avocent* holding as applying only to the "fairness" prong of the three-part specific jurisdiction test).

For these reasons, the Court will apply traditional specific jurisdiction analysis as outlined most recently by the Supreme Court in *Ford Motor Company* in considering the issue here. The first requirement under that analysis is to examine whether the defendant purposefully availed herself of the privilege of conducting activities in the forum state. 141 S. Ct. at 1024-25. Those contacts "'must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.,* at 1025. The evidence in this case demonstrates that Defendant's contacts with Tennessee take two

forms – her musical performances and music-related business, and her enforcement activities in 2020. As discussed above, Defendant has travelled to Memphis, Tennessee for performances and music-related business using the name "LADY A" on at least five or six occasions over the last several years; and her music is available for download in Tennessee and elsewhere. Defendant's enforcement activities relate to her engaging a Tennessee-based attorney to represent her with regard to trademark issues, and her discussions and exchange of draft agreements with the individual plaintiffs who are based in Tennessee. Defendant testified that, during these communications, she was trying to protect her trademark. The Court concludes that these contacts were not random, isolated, or fortuitous, and are sufficient to show Defendant purposefully availed herself of conducting activities in Tennessee.

The second requirement, as discussed above, is that the plaintiff's cause of action "arise out of or relate to" the defendant's contacts with the [forum] state. *Ford Motor Co.,* 141 S. Ct. at 1025-26. As for Defendant's performances and business activities in Memphis over the last several years, the Court is persuaded those activities are related to the issues at the heart of this litigation (as well as the litigation initiated in Washington), *i.e.,* whether the defendant has a valid, enforceable trademark, and if so, whether that trademark has been or will be infringed by the plaintiffs' use of the mark. Defendant claims to have common law rights in the "LADY A" trademark that extend nationwide as a result of her long, continuous, and prominent use of the mark. (Doc. No. 16-1 ¶ 18).[4] Thus, Defendant's use of the mark in Memphis, through

---

[4] More specifically, Defendant alleges in the Washington infringement action:

> Ms. White has accrued common law rights in the LADY A trademark in connection with music and entertainment services as a result of her long, continuous, and prominent use of the LADY A mark since at least the early 1990s. Ms. White's rights in the LADY A trademark are particularly strong in the State of Washington and the Pacific Northwest, where most of her performances have occurred; however, her rights also extend nationwide by virtue of Ms. White's numerous performances and music sales under the LADY A trademark throughout the United States. Ms.

performances and through conducting her music-related business there, relates to the issue of whether Defendant has a valid, enforceable common law trademark. *See, e.g., Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.,* 249 F.3d 564, 571-72 (6th Cir. 2001) (explaining that common law trademarks or service marks are obtained by actual, continuous use in particular areas). And the validity and enforceability of her claimed trademark is directly relevant to Plaintiffs' requested declaration that they are lawfully using the same trademark. (Doc. No. 1 ¶ 37); *cf. Power Systems, Inc. v. Hygenic Corp.,* 2014 WL 2865811, at *7 (explaining that defendant's purported trade dress rights "are not based on common law theories but rather the Lanham Act, further diminishing the relationship between this declaratory action and [defendant's] Tennessee sales and marketing efforts.")

In addition, Defendant's efforts to enforce her trademark, by initially engaging a Tennessee-based attorney and through discussions and exchange of draft agreements with the Tennessee-based plaintiffs, directly relate to Plaintiffs' pending request for a declaration of non-infringement.

The final requirement for the exercise of specific personal jurisdiction is a showing that the defendant has a sufficiently substantial connection to the forum such that the exercise of jurisdiction is not unreasonable. *Ford Motor Company,* 141 S. Ct. at 1029-30; *Schneider*, 669 F.3d at 703. When the first two criteria of the personal jurisdiction test are met, however, "there is an inference of reasonableness and 'only the unusual case will not meet this third criteria.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903-04 (6th Cir. 2017) (quoting *Air Prods. & Controls, Inc.,* 503 F.3d at 554)). In making this determination, the court is to consider the following factors,

---

White's nationwide common law trademark rights date to at least as early as the early 2000s, when she first began performing extensively outside of the State of Washington.

(Doc. No. 16-2 ¶ 18).

among others: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016).

As the first two criteria have been met in this case, the Court infers reasonableness. To overcome the inference, Defendant argues the exercise of jurisdiction is unreasonable because it will require that she (an independent artist of limited means) bear the significant financial burden of litigating in a distant forum. Defendant points to the cost of travel and shepherding evidence and witnesses to Tennessee as significant expenses. Defendant does not specify, however, what evidence must be "brought" (as opposed to being electronically filed and transferred) to the forum, nor does she specify the number of witnesses she will need to "shepherd" to Tennessee for this litigation. In terms of her own travel expenses, the Court notes that Defendant has travelled to Tennessee for music-related activities at least once a year over the last several years. Defendant has not addressed the other factors.

Plaintiffs argue Tennessee has an interest in the claims at issue here because all the individual plaintiffs are Tennessee residents who conduct business primarily in Tennessee. Plaintiffs also argue they have an interest in obtaining relief in this case through a declaration that they may continue using the trademark at issue.[5]

Having considered the "reasonableness" of exercising jurisdiction over Defendant, the Court concludes that this is not "the unusual case" where only the third requirement weighs against jurisdiction. The forum state has an interest in resolution of this dispute, and Plaintiffs have an interest in obtaining relief. As for the financial burden, Defendant has not provided sufficient

---

[5] Neither party has addressed the fourth factor – other states' interest in securing the most efficient resolution of the controversy. The Court does not view this factor as weighing heavily in determining the reasonableness of exercising jurisdiction.

11

evidence suggesting this factor outweighs all others in rendering the exercise of jurisdiction unreasonable. For these reasons, the Court concludes that Plaintiffs have shown, even by a higher preponderance-of-the-evidence standard, that the exercise of personal jurisdiction over Defendant is warranted.

**B. <u>Improper Declaratory Judgment Action</u>**

Defendant alternatively argues this case should be dismissed because it is an improper "anticipatory" declaratory judgment action. It is well settled that the granting of a declaratory judgment rests in the sound discretion of the court. *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984). In determining whether a declaratory ruling is appropriate, courts in the Sixth Circuit are to consider the following five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

746 F.2d at 326.

The parties agree the Court's discretion is to be guided by these factors, but disagree as to how they weigh in this case. As for the first factor, Plaintiffs argue this action would settle the issue of whether they have the right to use the claimed trademark, and/or whether they have infringed on Defendant's claimed rights in the trademark. Defendant does not argue otherwise. The Court agrees that this action would settle the controversy over these issues.

As for the second factor, Defendant argues this action unnaturally postures the Musical Group and LAE, "the infringer," as plaintiffs "without serving any useful purpose." (Doc. No. 15, at 9). Defendant contends this posture is akin to a putative tortfeasor suing an injured party for a

12

declaration of nonliability, and strongly favors dismissal of the action. Defendant's comparison of this trademark-related action to a tort action, however, is not an obvious one. Indeed, in *AmSouth Bank v. Dale,* 386 F.3d 763, 786 (6th Cir. 2004), the Sixth Circuit distinguished the putative tortfeasor scenario from trademark litigation:

> Normally, when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.' *See* 10B Wright, Miller & Mary Kay Kane § 2765 at 638 (3d ed.1998) ('The courts have also held that it is not one of the purposes of the declaratory judgments act to enable a prospective negligence action defendant to obtain a declaration of nonliability.'). This general rule is subject to exception when some additional harm, not merely waiting for the natural plaintiff to sue, will befall the declaratory plaintiff in the meantime. *That is, a party who wants, for example, to embark on a marketing campaign, but has been threatened with suit over trademark infringement, can go to court under the Declaratory Judgment Act and seek a judgment that it is not infringing that trademark, thereby allowing it to proceed without the fear of incurring further loss.*

(emphasis added). The court went on to explain that "the important distinction in the case law is between situations where some uncertainty beyond the possibility of litigation exists (*i.e.,* trademark infringement) and those where the injury is already complete." *Id.,* at 787; *see also Catholic Health Partners v. CareLogistics, LLC,* 973 F. Supp. 2d 787, 793 (N.D. Ohio 2013) ("A declaratory judgment action serves a 'useful purpose' when the declaratory plaintiff will suffer injury if the court fails to clarify the parties' legal relations.")

Despite Defendant's argument, therefore, the plaintiffs are not akin to a putative tortfeasor suing for a declaration of non-liability where the injury is already complete. Plaintiffs' declaratory judgment action here, for the reasons explained by the *AmSouth* Court, seeks to settle the uncertainty surrounding their use of the "Lady A" trademark, and serves the "useful purpose" of clarifying their trademark rights as they seek to continue performing and operating as "Lady A." For these reasons, the second factor does not weigh in favor of dismissal.

According to Defendant, the third factor warrants dismissal regardless of the other factors. Defendant contends that Plaintiffs engaged in "procedural fencing" by bringing this action as an "anticipatory" lawsuit motivated by forum shopping. Defendant suggests she was surprised when Plaintiffs failed to continue negotiations after receiving her $10 million offer, and filed this suit instead. Defendant argues the plaintiffs' "gamesmanship" is similar to that criticized by the courts in *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assocs.,* 16 Fed. Appx. 433, 437 (6th Cir. 2001); *AmSouth Bank v. Dale, supra*; *Catholic Health Partners v. CareLogistics, LLC,* 973 F. Supp. 2d 787, 795 (N.D. Ohio 2013); and *International Union v. Dana Corp.,* 1999 WL 33237054, at *6 (N.D. Ohio 1999).

In *Zide Sport Shop,* a case arising out of a business dispute regarding the contractual obligations of the parties, the defendants advised the plaintiffs they would file suit if they did not receive a serious settlement offer within seven days. 16 Fed Appx. at 435. In response, the plaintiffs requested a 25-day extension, which the defendants granted. *Id.* One day before the extension expired, the plaintiffs filed an action seeking declaratory relief and trademark cancellation in the Southern District of Ohio. *Id.* Rather than serve the defendants with the lawsuit, the plaintiffs sent a letter explaining their position. *Id.* Some time later, the defendants filed suit against the plaintiffs in the District of Kansas alleging trademark infringement, breach of contract, and other claims. *Id.,* at 435-36. At the defendants' request, the Ohio district court declined to hear the declaratory judgment action and dismissed the case. *Id.,* at 436.

On appeal, the Sixth Circuit concluded the district court did not abuse its discretion in dismissing the action because the plaintiffs filed the action in "bad faith," and had engaged in "procedural fencing." *Id.,* at 438. Because "[t]he plaintiffs knew that if a settlement was not reached, the defendants would seek legal recourse," the plaintiffs filed suit one day before the

14

negotiation extension period expired. *Id.* The court also pointed out the plaintiffs delayed serving the defendants, and "misled" the defendants by continuing to engage in settlement discussions after filing suit. *Id.*

Similarly, in *AmSouth Bank,* the court found the plaintiffs had "rac[ed] to the courthouse" after they signed a tolling agreement, engaged in preliminary negotiations, and even asked for a formal settlement demand that was being prepared by the defendants when the plaintiffs filed suit. *Id.,* at 787. "It seems clear," the court concluded, "that the [plaintiffs] filed declaratory actions not to resolve issues of liability that were hindering their normal behavior, but instead to gain procedural advantage." *Id.,* at 790.

In *Catholic Health Partners,* the court found the plaintiffs had engaged in "procedural fencing" because they filed suit after asking for and receiving documentation to support the defendant's settlement demand, and before a scheduled call with the defendant to discuss the plaintiff's response. *Id.,* at 795.

Finally, in *International Union,* the court denied the defendant's motion to transfer based on the "first-to-file" rule because the defendant engaged in improper forum shopping. 1999 WL 33237054, at *2-5. The court pointed out that the defendant filed a declaratory judgment action before responding to the plaintiff's inquiries about its intentions, and in a forum with little or no connection to the lawsuit. *Id.*

In the Court's view, these cases are distinguishable from the facts at issue here. Although the parties were in discussions before Plaintiffs filed this action, there was no negotiation deadline leading Defendant to believe negotiations would continue until a certain time. And there is no evidence Plaintiffs engaged in any other behavior that "misled" Defendant into believing negotiations would continue. Indeed, it would not have been unreasonable for Plaintiffs to believe

15

Defendant effectively ended negotiations by extending a revised settlement offer requiring a $10 million payment that was not a part of the earlier discussions. In addition, Defendant has not shown Plaintiffs "raced her to the courthouse," because there is no evidence she told the plaintiffs she intended to file her own lawsuit. Furthermore, Plaintiffs did not choose a forum with a minimal connection to the lawsuit. The individual plaintiffs all reside here and the corporate plaintiff conducts business here. Finally, as the Court explained above, Defendant's contention that she is the "true plaintiff" is not borne out by the cases she cites. Both parties claim rights to the trademark at issue, and therefore, each party can be considered the "true plaintiff." Therefore, as Defendant has not demonstrated that Plaintiffs engaged in procedural fencing, forum shopping, or gamesmanship, the Court concludes the third factor does not weigh in favor of dismissal. *See, e.g., Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.,* 759 Fed. Appx. 431, 438 (6th Cir. 2018) ("'We are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record.'")[6]

The fourth factor – relating to possible friction between the federal and state courts – does not apply here as there is no state action at issue.

As to the fifth factor, Defendant argues the trademark infringement action she filed in the Western District of Washington provides the more effective remedy because she lives in that

---

[6] Defendant also argues that Plaintiffs' deceptive gamesmanship precludes application of the "first-to-file rule." The "first-to-file-rule" is "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Trans., LLC*, 814 F.3d 785, 789 (6th Cir. 2016). It provides that, "'when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" *Id.* (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 353, 551 (6th Cir. 2007) (emphasis in original)). In considering the rule, the court is to determine whether any equitable considerations, such as bad faith, anticipatory suits, or forum shopping, weigh against its application in a particular case. *Id.* Plaintiffs do not urge application of the first-to-file rule here. In any event, Defendant has failed to support her claim of deceptive gamesmanship for the reasons described above.

District, and trial is likely to occur more quickly there. The Court considers these arguments more fully below in connection with the motion to transfer venue, and for the reasons described there, the Court concludes this factor does not weigh in favor of dismissal.

In summary, the *Grand Trunk* factors do not militate against exercising discretion to consider the declaratory relief requested in this action. Thus, Defendant's request to dismiss this action based on those factors is denied.

## C. <u>Motion to Transfer</u>

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[7] As the Sixth Circuit has explained, district courts have broad discretion under the statute to determine when party convenience or the interest of justice makes transfer appropriate. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

In ruling on a motion to transfer venue, a court typically considers factors relating to the convenience of the parties and the public interest. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013). Factors relating to the convenience of the parties include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises, if relevant; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." 134 S. Ct. at 581 n. 6. Factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having

---

[7] Plaintiffs do not contest that the Western District of Washington is a district where this case might have been brought.

a trial of a diversity case in a forum at home with the law that will be applied. *Id; see also Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016). Courts are also to give some weight to the plaintiff's choice of forum. *Atl. Marine Const. Co.*, 134 S. Ct. at 581 n. 6. The burden of demonstrating transfer is warranted is on the moving party. *Means,* 836 F.3d at 652 n. 7.

Defendant argues transfer is appropriate because she anticipates witnesses residing in Washington (specifically, Sonny Byers and Todd Ivester) will be needed to provide corroboration of her trademark rights. Defendant contends that she cannot compel these witnesses to testify in Tennessee, nor does she have the means to fund their travel to Tennessee. Defendant also points out that Plaintiffs are in a better financial position to bear the burden of travel and other litigation expenses.

The Court recognizes that Defendant's use of the "Lady A" trademark will likely be corroborated by witnesses in Washington, where Defendant resides and has performed, and that a Washington courtroom will be more convenient for the attendance of those witnesses if and when the case goes to trial. On the other hand, Defendant claims nationwide common law rights in the trademark.[8] Therefore, supporting witnesses presumably will not be limited to those residing in the Washington area, but will include witnesses residing in other states, including Tennessee. As for documentary evidence, Defendant has not specified any supporting evidence that must be "brought" to this forum, nor has she explained why production of such evidence would be

---

[8] For example, Plaintiff alleges: "In the 2000s, as Ms. White continued to build her profile and the LADY A brand, she performed under the LADY A mark across the South, including in Tennessee;" and "For many years, Ms. White has regularly performed at music festivals throughout the United States, such as the Waterfront Blues Festival, the Winthrop Blues Festival, and the Chicago Blues Festival, among others." (Doc. No. 16-1, ¶¶ 13-14).

18

burdensome given the availability of electronic document filing and transfer. Thus, the location of non-party witnesses and documentary evidence does not weigh in favor of transfer.

As for the costs of litigating, the Court acknowledges that Plaintiffs likely have more financial resources, but Defendant has not provided any specifics about the costs she expects to incur.[9] Without more information regarding expected litigation costs, this factor does not weigh in favor of transfer. As for her own travel expenses, as noted above, Defendant has travelled to Tennessee for music-related activities at least once a year over the last several years.

In terms of private interest factors, therefore, Defendant has not shown that the Western District of Washington is a *more convenient* forum for this litigation. *See, e.g., Van Dusen v. Barrack,* 376 U.S. 612, 645-46, 84 S. Ct. 805, 824, 11 L. Ed. 2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to forum likely to prove equally convenient or inconvenient."); *B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 931, 933 (W.D. Tenn. 2013).

As for public interest factors, Defendant argues this matter will be adjudicated more quickly in the Western District of Washington, citing statistics showing that cases proceed to trial more expeditiously in that District than in this District. Defendant also points out that the Washington case has already been set for trial in December 2021, "while this court has warned that it cannot predict when trial will occur." (Doc. No. 50, at 5). Defendant does not state the source of the "warning," but the Court notes that both parties in this case have requested a trial date "no

---

[9] The Court notes that Defendant lists four attorneys who represent her, working from offices in California, New York, Washington, D.C., and Nashville, Tennessee. The Court assumes that, for counsel, litigating in this forum is as convenient (or inconvenient) as litigating in the Western District of Washington.

19

earlier than October 17, 2022." (Doc. No. 57, at 8).[10] Should the parties prefer a trial date in December 2021, the Court will make every effort to accommodate that request. Defendant has not shown the public interest factors favor transfer.

In sum, Defendant has not shown the private interest factors or the public interest factors warrant transfer, nor has she identified any other factors suggesting transfer is warranted. Therefore, the Court concludes that Defendant's request to transfer venue should be denied.

### IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss or Transfer Complaint (Doc. No. 14) is **DENIED.**

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[10] To the extent, the warning relates to the priority of trials in criminal cases over trials in civil cases due to the Speedy Trial Act, 18 U.S.C. § 3161, Defendant does not explain why that priority would not also affect the availability of trials in any federal district court.